IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| VICTORIA DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-05075-MDH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of her application for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. Plaintiff has exhausted her administrative remedies and the matter is ripe for judicial review.[1] The Court has carefully reviewed the files and records in this case and finds the opinion of the ALJ is supported by substantial evidence in the record as a whole. The decision of the Commission is **AFFIRMED**.

## BACKGROUND

Plaintiff was born on July 4, 1962. After graduating from high school, Plaintiff worked as a housekeeper, office clerk, cashier, home health aide, and office manager. She left her most recent job in February of 2008, which is when she claims her disability began. Plaintiff alleges she is no longer able to work due to injuries caused or exacerbated by an auto accident that she

---

[1] Plaintiff filed a Title II application for SSDI benefits on February 25, 2011, claiming disability beginning February 22, 2008. Plaintiff's claim was initially denied on April 20, 2011. Plaintiff filed a written request for a hearing, which was held on September 12, 2012. The ALJ issued a decision on October 17, 2012, finding Plaintiff not disabled under the Act. The Appeals Counsel denied Plaintiff's request for a review of the ALJ's decision.

1

was in on October 22, 2007.[2]  Plaintiff filed an initial application for disability benefits, which was denied on February 11, 2011.  She filed the current application on February 25, 2011.

Plaintiff lists a variety of physical and mental conditions that limit her ability to work. Plaintiff's chief complaint is neck and back pain due to "bulging discs in neck."  She further complains of severe headaches, dizziness/vertigo, numbness in her arms/hands, high blood pressure, memory loss, concentration problems, difficulty breathing, and MRSA (staph carrier). Plaintiff claims that the pain associated with these conditions limits her ability to sit or stand for more than five to ten minutes, concentrate for more than thirty minutes, sleep, complete household chores, and engage in physical activity.  Plaintiff further asserts that pain affects her ability to drive, lift, and reach.  Other than pain, Plaintiff alleges she is functionally limited due to numbness in her arms/hands that makes it difficult for her to hold and clasp objects; dizziness that impairs her ability to stand and walk; air pollutants that activate her asthma and allergies and lead to shortness of breath; and headaches and fatigue that negatively affect her comprehension and memory.  Plaintiff's husband submitted a letter echoing these alleged impairments.[3]

Plaintiff's medical records show that Plaintiff has been diagnosed with asthma, headaches, dizziness, high blood pressure, and posterior cervical pain.  Treatment records reveal that Plaintiff has been prescribed medication for her asthma, allergies, headaches, and high blood pressure that appears to be effective.  As to Plaintiff's neck and back pain, radiological testing shows multilevel degenerative changes with spinal cord stenosis at Plaintiff's C5-C6 and C6-C7. Plaintiff's cervical spine region exhibits tenderness and occasionally displays a limited range of

---

[2] According to Plaintiff, she was driving to work when her truck hydroplaned across four lanes of highway and came to a stop in the middle of a road where she was "forked" by another car.  Tr. 41.

[3] He states that the pain in Plaintiff's neck adversely affects everything she does and the only thing that seems to help her pain is lying down and resting.  Tr. 217.  He also cites numbness in her arms and hands that causes her to drop things, dizzy spells that limit her ability to walk, pain that limits her ability to sit for more than fifteen minutes, concentration and memory problems, sadness, and headaches.  Tr. 217.

motion. Doctor Barnes reported that Plaintiff's MRI's suggest mild spinal stenosis, which Plaintiff's neurosurgeon is treating conservatively. As to Plaintiff's complaints concerning her arms/hands, physician notes describe Plaintiff's upper extremities as "positive" for pain, numbness, and weakness at certain times but also as "negative" or "unremarkable" at other times. Plaintiff's musculoskeletal exams generally show normal range of motion and normal neural reflexes. Doctors Jumper and Barnes opine that Plaintiff's complaints of arm and hand pain/numbness are likely related to her spinal cord stenosis.

The ALJ found Plaintiff not disabled under the Act. The ALJ first explained that Plaintiff's current application considers only the time period from February 12, 2011 to June 30, 2012.[4] The ALJ determined that, during that time period, Plaintiff suffered from severe impairments including degenerative disc disease of the cervical spine, headaches, asthma with allergies, hypertension, and thyroid dysfunction. According to the ALJ, these impairments do not meet or medically equal the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff retained the RFC to perform a range of "light work" as defined in 20 C.F.R. § 404.1567(b). Specifically, he found Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand or walk a total of 6 hours and sit for 6 hours in an 8-hour work day; occasionally stoop, crouch, kneel, crawl, and climb – but not ladders, ropes, or scaffolding; perform occasional overhead reaching; perform tasks not involving exposure to temperature and humidity extremes or requiring more than infrequent outdoor activity; perform work not involving operation of vibrating tools or equipment; perform tasks not involving concentrated exposure to pulmonary irritants such as dust, gases, fumes, and smoke; perform tasks not

---

[4] The ALJ found the issue of disability prior to February 12, 2011 res judicata in light of Plaintiff's previous application for disability, which was decided on February 11, 2011. The ALJ further noted that Plaintiff's date last insured was June 30, 2012. Neither party disputes this time period.

3

requiring constant use of foot or hand controls/pedals; perform no more than frequent fine and gross manipulation; and perform work in an environment with no greater than a moderate level of background noise.  The ALJ determined that Plaintiff's impairments do not preclude her from performing work that exists in significant numbers in the national economy, including work as an arcade attendant, rental clerk, or video clerk.  The ALJ concluded that Plaintiff was not disabled during the relevant time period under sections 216(i) and 223(d) of the Act.

## STANDARD

Judicial review of the Commissioner's decision is limited to an inquiry concerning whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g).  Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000).  This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).  That the reviewing court would come to a different conclusion is not a sufficient basis for reversal.  *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009).  "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits."  *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

## DISCUSSION

To qualify for benefits under the Social Security Act and accompanying regulations, a claimant must prove that she is disabled.  *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The Social Security Administration has established a five-step process for determining whether an individual is disabled. *Id.* at § 404.1520(a).[5] Here, Plaintiff's arguments surround the ALJ's determination of Plaintiff's residual functional capacity ("RFC").

RFC is defined as the most a claimant can still do despite her limitations. *Id.* at § 404.1545(a)(1). In other words, it is:

> an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities.

SSR 96-8P. The ALJ must determine the claimant's RFC "based on all of the relevant medical and other evidence" such as "medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Id.* at § 404.1545(a)(3); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). While "some medical evidence must support the determination of a claimant's RFC," the ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ's decision "must include a narrative discussion [of RFC] describing how the evidence

---

[5] The five-step process considers whether: "(1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work." *Halverson*, 600 F.3d at 929. If the ALJ determines at step three that the claimant's impairments do not meet or equal one of the listed impairments, then the ALJ must assess the claimant's residual functional capacity to use at steps four and five. 20 C.F.R. § 404.1520(e).

supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P.

### 1. The ALJ's RFC assessment is supported by substantial evidence.

Upon review of the files and records in this matter, including evidence that supports and evidence that detracts from the ALJ's findings, the Court finds the ALJ's RFC assessment is supported by substantial evidence in the record as a whole. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible to the extent that they were inconsistent with the RFC. In coming to this conclusion, the ALJ examined medical records, observations of treating physicians and others, Plaintiff's descriptions of her limitations, and the opinions of two medical consultants regarding Plaintiff's RFC. Tr. 22-24. The ALJ noted inconsistencies in the evidence,[6] assessed credibility,[7] and rendered Plaintiff's RFC based on the functional limitations that the ALJ found credible in light of medical and other evidence. *See Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before

---

[6] The ALJ cited Plaintiff's reported symptoms and limitations and then noted: (1) diagnostic imaging tests of Plaintiff's neck show "degenerative changes [that]result in only mild stenosis, with no indication of nerve root or cord compression" and physical examinations show tenderness but full range of motion; (2) examinations of Plaintiff's upper extremities "revealed full motor strength, with normal muscle tone, and no indication of muscle atrophy or tremor" and sensory testing "has found claimant's upper extremity sensation to be intact to touch, pinprick, and vibration"; (3) physician notes indicate Plaintiff "ambulates with normal gait and station, and does not require an assistive device"; (4) Plaintiff is prescribed Topamax for her headaches that appears to be effective per examination records and Plaintiff's statements to her physicians, Plaintiff's diagnostic brain scans are normal, and Plaintiff has never required emergency treatment for her severe headaches; (5) medical records and lab reports show Plaintiff's hypertension and hypothyroidism are well-controlled with medication that is effective; (6) Plaintiff's longstanding history of allergic asthma has not prevented her from working in the past, medical records indicate it is effectively controlled with an albuterol inhaler, and respiratory exams "have noted no intercostal retractions or use of accessory muscles for respiration, and have found normal breathing sounds, with no rales, rhonchi or wheezing."

[7] The ALJ concluded that Plaintiff's testimony was not fully credible in light of evidentiary inconsistencies and her financial interest in the outcome; the ALJ concluded that "the claimant's subjective complaints are found to be somewhat exaggerated and inconsistent with the other evidence, including the clinical and objective findings of record[.]" Tr. 24-25. The ALJ also mentioned the opinion provided by Plaintiff's husband and stated it was entitled to "little weight" considering it was a mere lay opinion based on casual observation and was "potentially influenced by loyalties to family." Tr. 24.

6

determining a claimant's RFC.").[8]  The ALJ's findings are supported by sufficient evidence in the record such that a reasonable person could find adequate support for the ALJ's conclusion.

Plaintiff argues the RFC determination is improper for several of reasons.  First, Plaintiff argues the ALJ failed to properly analyze Plaintiff's daily activities.  Plaintiff claims the ALJ failed to consider the frequency and independence of Plaintiff's daily activities as well as her ability to sustain those activities over a period of time.  *See, e.g., Reed v. Barnhart*, 399 F.3d 917, 922 (8th Cir. 2005) (citing SSR 85-16).  Contrary to Plaintiff's assertion, the ALJ clearly acknowledged and considered Plaintiff's self-reported daily activities, including their frequency, independence, and longevity.  Tr. 22-23.  The reported daily activities, as conveyed by the ALJ, were extremely limited and included merely laying in bed, completing "basic activities" with the assistance of others, and being unable to do anything for more than 15 minutes before "wearing out."  The ALJ did not, as Plaintiff claims, use Plaintiff's daily activities *to justify* a less restrictive RFC;[9] rather, the ALJ justified a less restrictive RFC *in spite* of Plaintiff's reported daily activities based on other evidence in the record.  He acknowledged the extremely limited nature of Plaintiff's daily activities but ultimately concluded that Plaintiff's daily activities were limited for reasons that were not related to Plaintiff's impairments.  *See* Tr. 24 ("these impairments do not cause the degree of limitations alleged by the claimant . . . the claimant's subjective complaints are found to be somewhat exaggerated and inconsistent with other

---

[8] Plaintiff does not argue the ALJ's credibility determinations concerning Plaintiff's subjective complaints were erroneous.  Because the ALJ explicitly discredited Plaintiff's testimony and gave good reason for doing so, the Court will defer to the ALJ's credibility findings.  *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)).

[9] *Compare Reed v. Barnhart*, 399 F.3d 917 (8th Cir. 2005) (reversing where ALJ found the claimant's daily activities such as fixing meals, watching movies, checking mail, and doing laundry were inconsistent with her allegations of constant, debilitating symptoms); *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007) (remanding because plaintiff's daily activities such as some laundry, shopping, cleaning and preparing her children for school should not have been found inconsistent with her complaints of disabling pain).

7

evidence"). Accordingly, the ALJ properly considered Plaintiff's daily activities along with the other evidence in the record.

Plaintiff additionally argues that the ALJ erred by giving "substantial weight" to the opinions of two non-examining medical consultants. An ALJ may properly consider the opinion of a non-examining medical consultant as a factor in determining RFC but such an opinion does not alone constitute substantial evidence on the record as a whole. *Coleman v. Astrue*, 498 F.3d 767, 772 (8th Cir. 2007). The opinion of a state agency medical or psychological consultant may, under some circumstances, be entitled to greater weight than the opinion of a treating or examining source. *Shoemate v. Colvin*, No. 2:14 CV 32 DDN, 2015 WL 417571, at *9 (E.D. Mo. Feb. 2, 2015). Here, as stated by the ALJ, the record is void of any opinion from Plaintiff's treating physicians or medical providers regarding disability or RFC. Tr. 24. Although the ALJ gave "substantial weight" to the opinions of the two non-examining consultants, his RFC was based on all of the medical and other evidence in the record, which the ALJ found to be consistent with the consultants' opinions. Tr. 24. The ALJ acknowledged that these assessments were rendered at an early stage in the adjudicatory process but found that the evidence subsequently received was "largely in line" with the assessments, which he believed were well-explained and consistent with the record. The Court finds no error in the ALJ's reliance on the opinions of the two non-examining medical consultants.

Finally, Plaintiff attacks the ALJ's RFC determination as incomplete because it does not discuss all of Plaintiff's alleged limitations. Plaintiff argues that the ALJ's decision "leave[s] unaddressed Plaintiff's limitations in many areas addressed specifically in testimony, including Plaintiff's postural, manipulative, and environmental limitations." The Court notes that the RFC

does, in fact, address the allegedly omitted limitations.[10] Moreover, to the extent that the ALJ did not include certain limitations, it is reasonable to believe that the ALJ found Plaintiff was not limited in those functions.[11] *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003); *Wilber v. Astrue*, No. 09-CV-04235-NKL, 2010 WL 2772313, at *7 (W.D. Mo. July 12, 2010).

In sum, although Plaintiff may disagree with the ALJ's findings regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ's evaluation was consistent with the Commissioner's regulations and policies and was supported by substantial evidence in the record as a whole.

### 2. The ALJ included a sufficient narrative discussion of Plaintiff's RFC.

The main argument that Plaintiff furthers on appeal is that the ALJ did not provide the "narrative discussion" required by SSR 96-8P. That ruling states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

---

[10] As to postural limitations, the ALJ determined that Plaintiff can "stand or walk a total of 6 hours and can sit for 6 hours out of an 8-hour workday" as well as "occasionally stoop, crouch, kneel, crawl, and climb." Tr. 21. As to manipulative limitations, the ALJ determined that Plaintiff can "perform no more than frequent fine and gross manipulation." Tr. 22. As to environmental limitations, the ALJ determined that Plaintiff can perform tasks "not involving exposure to temperature and humidity extremes or requiring more than infrequent outdoor activity," "not involving operation of vibrating tools or equipment," "not involving concentrated exposure to pulmonary irritants such as dust, gas, fumes, and smoke," and can "work in an environment with no greater than a moderate level of background noise." Tr. 21-22.

[11] For example, the ALJ did not include any limitations regarding Plaintiff's ability to concentrate other than stating she can "work in an environment with no greater than a moderate level of background noise." However, as stated elsewhere in the decision, the ALJ did not find Plaintiff's alleged psychological limitations credible based on Dr. Akeson's opinion, the lack of medical history on mental health treatment, and the fact that Plaintiff did not allege any psychological limitations in her hearing testimony. Tr. 24.

SSR 96-8P. This district has clarified that SSR 96-8P does not require an ALJ to list each RFC limitation followed by the specific evidence that supports it; such a requirement would undermine the "all relevant evidence" standard and would result in duplicative discussions of the same evidence. *See, e.g., Doherty v. Colvin*, No. 4:13-0656-DGK-SSA, 2014 WL 3530898, at *3 (W.D. Mo. July 16, 2014) (Judge Kays); *Constant v. Astrue*, No. 11-0455-CV-W-REL-SSA, 2012 WL 2684971, at *20 (W.D. Mo. July 6, 2012) (Judge Larsen); *Gifford v. Astrue*, No. 09-3276-CV-S-GAF-SSA, 2010 WL 2953204, at *5 (W.D. Mo. July 26, 2010) (Judge Fenner); *Wilber v. Astrue*, No. 09-CV-04235-NKL, 2010 WL 2772313, at *7 (W.D. Mo. July 12, 2010) (Judge Laughrey).

Here, Plaintiff argues that the ALJ's discussion, "while covering many important things, never provides a clear and persuasive connection between the many specific RFC findings adopted and the actual evidence of record." The Court disagrees. The ALJ began his RFC analysis by citing Plaintiff's reported symptoms, limitations, and daily activities. He then proceeded through Plaintiff's alleged impairments and cited inconsistencies in the record that undermined the severity of Plaintiff's reported limitations from those impairments. *See supra* at n. 6. The inconsistent evidence was derived from medical tests, physician examinations, physician observations (or lack thereof), and other evidence in the record that exhibited Plaintiff's capacity to function. The ALJ then highlighted two non-examining medical consultant opinions that discussed Plaintiff's RFC and he also referenced a letter submitted by Plaintiff's husband. The ALJ ultimately concluded that he did not believe Plaintiff's impairments caused the degree of limitation alleged by Plaintiff. He stated that: "Based upon a consideration of the record as a whole, the undersigned finds that, despite her impairments, the

10

Case 3:14-cv-05075-MDH   Document 19   Filed 05/01/15   Page 10 of 11

claimant retains the capacity to perform work at the light exertional level consistent with the above residual functional capacity assessment." Tr. 24.

The Court finds that the ALJ provided a sufficient "narrative bridge" to connect the medical evidence and his RFC assessment. *See Hilgart v. Colvin*, No. 6:12-03022-DGK-SSA, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013). The ALJ's decision includes a discussion of specific medical facts and non-medical evidence supporting the ALJ's RFC determination and it fully explains and resolves all material inconsistencies in the record.[12] The ALJ's RFC determination fully complies with SSR 96–8p and Agency regulations.

## CONCLUSION

For the reasons set forth herein, there is substantial evidence in the record as a whole to support the ALJ's disability determination. Accordingly, the Commissioner's denial of benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated: May 1, 2015

                                  */s/ Douglas Harpool*
                                  **DOUGLAS HARPOOL**
                                  **UNITED STATES DISTRICT JUDGE**

---

[12] This case is clearly distinguishable from the cases where courts have held the narrative discussion insufficient. *See, e.g., St. Clair v. Colvin*, No. 2:12-04250-DGK-SSA, 2013 WL 4400832, at *2-3 (W.D. Mo. Aug. 14, 2013); *Padulla v. Astrue*, No. 11-5045-CV-SW-FJG, 2012 WL 3962348, at *1 (W.D. Mo. Sept. 10, 2012).